**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

BRAEDEN WILLIAMSON,

    Petitioner - Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS WYOMING STATE
PENITENTIARY WARDEN[*];
WYOMING ATTORNEY GENERAL,

    Respondents - Appellees.

No. 24-8015
(D.C. No. 1:23-CV-00102-SWS)
(D. Wyo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY[**]**
_____

Before **HARTZ**, **KELLY**, and **EID**, Circuit Judges.
_____

The district court held that Braeden Williamson's pro se 28 U.S.C. § 2254 habeas

petition was untimely, declined to equitably toll the limitations period, dismissed the

---

[*] The Wyoming Department of Corrections Wyoming State Penitentiary Warden is substituted as a Respondent due to Mr. Williamson's transfer from the Wyoming Medium Correctional Institution to the Wyoming State Penitentiary. There is no indication in the district court's docket that prison officials complied with Federal Rule of Appellate Procedure 23(a) before transferring Mr. Williamson. Although we do not condone prison officials' violation of Rule 23(a), Mr. Williamson has not sought any relief or claimed that the transfer prejudiced his ability to seek a certificate of appealability. *See Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir. 1982).

[**] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

petition with prejudice, and denied a certificate of appealability (COA).  He now seeks a

COA to appeal the district court's judgment.  Because no reasonable jurist could

conclude that the district court's rulings were debatable or wrong, we deny a COA and

dismiss this matter.

## I.     Background

Mr. Williamson pleaded guilty in Wyoming state court to two counts of

third-degree sexual abuse of a minor.  At the time of the offenses, he was 17 years old.

The trial court sentenced him to four to eight years in prison.  He did not appeal, and his

conviction became final on July 6, 2020, when the time to appeal expired.

Mr. Williamson was initially housed in a county jail until he was transferred to the

Wyoming Department of Corrections (WDOC) on August 5, 2020.  He participated in the

Wyoming Boot Camp/Wyoming Youthful Offender Program from September 9 to

November 18.  On December 6, Mr. Williamson began his post-conviction investigation.

He received the transcript from his change-of-plea hearing on February 10, 2021.  He was

sexually assaulted on February 22 at the beginning of a 19-day COVID-19 lockdown.

On October 28, 2021, Mr. Williamson filed a pro se petition for post-conviction

relief in state court.  The state trial court denied his petition on October 19, 2022, and the

Wyoming Supreme Court (WSC) denied review on December 7, 2022.

Mr. Williamson filed a pro se § 2254 habeas petition on June 15, 2023.[1]  In Claim

One, he argued his guilty plea was involuntary and he was deprived of due process

---

[1] Mr. Williamson amended his § 2254 petition twice.  His Second Amended
Petition is the operative filing.

because he provided an insufficient factual basis. He claimed that the elements of the crime were not satisfied by his plea because he did not admit his age at the time of the offenses. In Claim Two, Mr. Williamson contended the state trial court denied him due process by failing to transfer his case to juvenile court. He relatedly claimed that his defense counsel was ineffective and his guilty plea was not knowing and voluntary. In Claim Three, Mr. Williamson argued his guilty plea was not knowing and voluntary because the statute of conviction is unconstitutionally vague.

Respondents moved to dismiss Mr. Williamson's habeas petition under Federal Rule of Civil Procedure 12(b)(6), arguing it was untimely and he was not entitled to equitable tolling.[2] The applicable statute of limitations provides, in relevant part:

> A 1-year period of limitation shall apply to a [§ 2254 habeas petition]. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> . . . or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A), (D). Respondents contended that under § 2244(d)(1)(A), the limitation period on Mr. Williamson's § 2254 petition ran from July 6, 2020, when his conviction became final, and expired on July 6, 2021. Mr. Williamson countered that all

---

[2] Respondents are the Wyoming Department of Corrections Wyoming State Penitentiary Warden and the Wyoming Attorney General.

of his claims were timely under § 2244(d)(1)(D) based on the dates that their factual predicates could have been discovered through the exercise of due diligence.

Mr. Williamson alleged that he could not have discovered the factual predicate for Claims One and Three before February 10, 2021, the day he received the transcript from his change-of-plea hearing. Rejecting this contention, the district court held that the factual predicate for Claim One could have been discovered at the time of that hearing because Mr. Williamson was present, he provided the factual basis for his plea, and he was therefore aware of what he did and did not say. And because Claim Three asserted a purely legal argument alleging the vagueness of the statute of conviction, the court held it was not based on the discovery of a factual predicate triggering § 2244(d)(1)(D).[3]

Mr. Williamson alleged that Claim Two was timely because it was based upon the WSC's decision in *Rosen v. State*, 503 P.3d 41 (Wyo. 2022), which he received from the prison library in late September 2022. *Rosen* concluded the jurisdictional provision of the Wyoming Juvenile Justice Act (Act) was ambiguous and held that juvenile courts have concurrent jurisdiction over adult defendants charged for conduct that occurred when they were minors. *See id.* at 45-46. Based on *Rosen*'s construction of the Act, Mr. Williamson believed he should have been tried in juvenile court. The district court held that *Rosen* was not a factual predicate for Claim Two under § 2244(d)(1)(D).

---

[3] The district court noted Mr. Williamson's reliance on the trial court's comment during the change-of-plea hearing questioning whether his factual basis satisfied the statute of conviction. It held that *if* that comment constituted a factual predicate for his claims, Mr. Williamson was present and heard the trial court's statement.

Consequently, the district court held that the one-year limitations period on all three of Mr. Williamson's claims ran from July 6, 2020, the date his conviction became final, as provided in § 2244(d)(1)(A). Because his deadline to file his § 2254 petition was therefore July 6, 2021, his petition was untimely when filed June 16, 2023.

The district court next addressed Mr. Williamson's contention that he was entitled to equitable tolling of the limitations period. It construed his petition as seeking equitable tolling based on his mental state after he was sexually assaulted on February 22, 2021, the COVID-19 lockdown that began that same day, his trial counsel's ineffective assistance, and a lack of funds. The court required Mr. Williamson to establish: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (internal quotation marks omitted).

The district court acknowledged Mr. Williamson's allegations that he was unable to research his case from September 10 to November 18, 2020, while he was in the Bootcamp program, and that he began working on his case on December 6. It concluded he failed to explain how a 19-day lockdown, which ended well before the one-year deadline, had prevented him from filing his § 2254 petition. Moreover, the court stated that Mr. Williamson was required to show that he had pursued his rights before he was locked down.

The district court also addressed Mr. Williamson's contention that the mental anguish he suffered after being sexually assaulted prevented him from working on his case. After noting the absence of a published Tenth Circuit decision finding that a

5

petitioner's mental incapacity tolled the § 2244(d)(1) limitations period, the district court cited other authorities concluding that equitable tolling may be warranted if a person is adjudicated incompetent, has been institutionalized, or is not mentally capable of pursuing his own claim. While recognizing the mental anguish caused by a sexual assault, the court concluded that Mr. Williamson had not shown he was incapable of pursuing his claim because of a mental incapacity. It acknowledged that medical records attached to Mr. Williamson's petition indicated he consistently sought mental health services during his incarceration in the WDOC. But the court decided that other documents showing his efforts to pursue his post-conviction claims demonstrated he was not mentally incapacitated between the date of the sexual assault in February 2021 and the deadline to file his § 2254 petition in July 2021.[4] The court also concluded that Mr. Williamson had not pursued his rights as diligently as he could under the circumstances. The district court granted Respondents' motion and entered a final judgment dismissing Mr. Williamson's § 2254 petition with prejudice.[5]

---

[4] The district court also held that Mr. Williamson failed to allege that his trial counsel's error caused his untimely filing. And because he cited no case supporting the proposition, the court rejected his contention that a lack of funds justified equitable tolling.

[5] After entry of judgment, Mr. Williamson filed a motion pursuant to Federal Rule of Civil Procedure 60(b). Shortly thereafter, he filed a notice of appeal, which became effective to appeal the final judgment when the district court denied his Rule 60(b) motion. *See* Fed. R. App. P. 4(a)(4)(B)(i). But because he did not amend his notice of appeal to include the court's decision on his motion, that ruling would not be within the scope of the appeal were we to grant a COA. *See* Rule 4(a)(4)(B)(ii).

## II.    Discussion

The district court dismissed Mr. Williamson's habeas petition on procedural

grounds without reaching his constitutional claims.  To obtain a COA, Mr. Williamson

must show "that jurists of reason would find it debatable" whether the procedural rulings

were correct and "whether the petition states a valid claim of the denial of a constitutional

right."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  We liberally construe

Mr. Williamson's pro se application for a COA but we do not act as his advocate.

*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### A.    Timeliness of Habeas Petition

#### 1.    Claims One and Three

Mr. Williamson argues the one-year limitations period on Claims One and Three

began pursuant to § 2244(d)(1)(D) because he placed the duty to discover any errors on

his counsel.  But that section refers to the date on which the factual predicate underlying

a claim could have been discovered.  By construing § 2244(d)(1)(D) as being triggered

by the errors underlying his claims rather than the facts, Mr. Williamson reads the term

"factual predicate" out of the statute.  Reasonable jurists would not debate that "such a

reading ignores the plain meaning of the statute [and] violates the canon of statutory

interpretation requiring us to give effect to every word of a statute," *Hain v. Mullin*,

436 F.3d 1168, 1173 (10th Cir. 2006).

#### 2.    Claim Two

Mr. Williamson contends that the one-year limitations period for Claim Two

began pursuant to § 2244(d)(1)(D) upon his discovery of the *Rosen* decision.  As with

Claims One and Three, he cannot rely on the discovery of an error or a claim as opposed to a factual predicate for a claim. Mr. Williamson acknowledges that a new legal theory does not constitute a factual predicate under § 2244(d)(1)(D). But he argues the district court erred because certain judicial decisions may qualify as discoverable factual predicates under that section. In support, Mr. Williamson cites *Johnson v. United States*, 544 U.S. 295 (2005), and *Easterwood v. Champion*, 213 F.3d 1321 (10th Cir. 2000). Each of these cases is distinguishable.

In *Johnson*, the Supreme Court considered when the one-year statute of limitations began for a claim challenging a federal sentencing enhancement based on a state-court conviction that was later vacated. 544 U.S. at 298; *see* 28 U.S.C. § 2255(f)(4) (beginning the limitations period for a motion to vacate a federal sentence on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence"). The federal inmate in *Johnson* discovered that his predicate conviction had been vacated when he learned of the state court's order. 544 U.S. at 300-01. The Court held that the state-court vacatur was a matter of fact for purposes of the limitation period in § 2255(f)(4). *Id.* at 302. It explained that "a claim of such a fact is subject to proof or disproof like any other factual issue." *Id.* at 307.

*Easterwood* also involved a fact subject to proof. The state's expert had testified that the petitioner was not insane at the time of the offense and was competent to stand trial. 213 F.3d at 1323. In a later decision in a different defendant's case, this court discussed the fact that the same expert had been suffering from severe mental illness at the time he testified in the petitioner's case. *Id.* We described the expert's mental

instability as the factual predicate for the petitioner's claim that the expert's diagnostic judgment had been impaired. *Id.* We held that the limitation period on this claim began pursuant to § 2244(d)(1)(D) on the date our decision disclosing the expert's mental illness became accessible in the prison law library. *Id.*

In contrast to *Johnson* and *Easterwood*, *Rosen* established an abstract and generally applicable proposition of law rather than a factual predicate for a claim. *Rosen* held that the Act gives the state juvenile court concurrent jurisdiction in cases where an adult defendant is charged for conduct that occurred when the defendant was a minor. 503 P.3d at 46. Unlike a fact, a court's clarification of a statute "is *not* subject to 'proof or disproof.'" *Shannon v. Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005) (quoting *Johnson*, 544 U.S. at 307, and further stating that "[w]e would never . . . ask a jury to decide whether a judicial decision had indeed changed a state's law in the relevant way, nor would the parties introduce evidence on the question").

We have not addressed the issue in a published decision, but the district court's rejection of Mr. Williamson's contention regarding the timeliness of Claim Two is consistent with our sister circuits' decisions holding that new legal precedents do not qualify as factual predicates under § 2244(d)(1)(D). In *Shannon*, 410 F.3d at 1088, the Ninth Circuit held that a state supreme court decision clarifying a matter of state criminal law did not supply a factual predicate under § 2244(d)(1)(D) where the decision "clarified the law, not the facts." The Eighth and Seventh Circuits have followed suit. *See Keller v. Pringle*, 867 F.3d 1072, 1075 (8th Cir. 2017); *Lo v. Endicott*, 506 F.3d 572, 574-75 (7th Cir. 2007). And courts construing what constitutes a "fact" for purposes of

§ 2255(f)(4) have reached the same conclusion. *See McCloud v. United States*, 987 F.3d 261, 263-66 (2d Cir. 2021) (rejecting factual-predicate contention based on a circuit-court decision holding a state crime was not an applicable offense for purposes of a sentencing enhancement); *Whiteside v. United States*, 775 F.3d 180, 183-84 (4th Cir. 2014) (rejecting similar factual-predicate contention and stating that "[i]nstead of altering the factual landscape, [the court decision] announced a generally applicable legal rule"); *E.J.R.E. v. United States*, 453 F.3d 1094, 1096-98 (8th Cir. 2006) (rejecting factual-predicate contention based on a circuit-court decision holding an amendment to a federal statute did not apply retroactively).

Mr. Williamson nonetheless argues he did not discover until he read *Rosen* that his counsel had provided ineffective assistance and that his guilty plea was not knowing and voluntary. But his conclusions regarding counsel's performance and the validity of his plea rest on legal theories, not any new provable fact. While *Rosen* may have changed the legal significance of certain facts, it did not disclose or modify any fact relevant to Claim Two. *See Whiteside*, 775 F.3d at 184; *McCloud*, 987 F.3d at 264 ("A fact is an actual or alleged event or circumstance, *as distinguished from* its legal effect, consequence, or interpretation." (brackets and internal quotation marks omitted)). Mr. Williamson also asserts it is provable that both his counsel and the trial court had misconstrued the Act as not permitting him to transfer to juvenile court. But counsel's and the trial court's statements regarding the Act at the time Mr. Williamson pleaded guilty are not new facts. Moreover, the proper construction of a statute is not "subject to proof or disproof like any other factual issue." *Johnson*, 544 U.S. at 307. We would not

10

ask a jury to make such a decision because "the courts are the final authorities on issues of statutory construction." *Volkswagenwerk Aktiengesellschaft v. Fed. Mar. Comm'n*, 390 U.S. 261, 272 (1968). Although *Rosen* may have brought to light a new legal theory, Mr. Williamson does not show that reasonable jurists would debate the district court's holding that *Rosen* was not itself, nor did it reveal, a new factual predicate triggering § 2244(d)(1)(D).

### 3.     Applicability of § 2244(d)(1)(A)

Mr. Williamson argues the district court erred in holding that the one-year deadline to file his § 2254 petition ran from the date his conviction became final after he did not file an appeal. He claims that § 2244(d)(1)(A) cannot apply to his claims because the trial court failed to advise him of his right to appeal his conviction—an advisement that he asserts is a due-process requirement under Wyoming law. But Mr. Williamson's contention is not supported by the language of the statute. Section 2244(d)(1)(A) defines the triggering event for the limitations period as "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." It says nothing about a petitioner's knowledge of the right to appeal, and Mr. Williamson cites no relevant authority for such a construction.[6] He fails to show that

---

[6] Mr. Williamson's citation to 28 U.S.C. § 2254(b)(1)(B) is inapposite. That section provides two exceptions to the exhaustion requirement when exhaustion would be futile. *See Fontenot v. Crow*, 4 F.4th 982, 1020 (10th Cir. 2021). Exhaustion and timeliness are separate statutory requirements for seeking federal habeas relief. *See* § 2254(b)(1)(A); § 2244(d)(1). Mr. Williamson also points to our statement in *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998), that "[t]he one-year time period begins to run in accordance with individual circumstances that could reasonably affect the

(continued)

reasonable jurists would debate the district court's refusal to graft an additional criterion onto § 2244(d)(1)(A).

Mr. Williamson has not demonstrated that reasonable jurists would debate the district court's holding that his § 2254 petition was untimely.

## B.    Equitable Tolling

"Equitable tolling is a rare remedy to be applied in unusual circumstances," and a petitioner "bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." *Yang*, 525 F.3d at 928-29 (internal quotation marks omitted). "Equitable tolling is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir. 2003) (brackets and internal quotation marks omitted). A petitioner must show he "did not sleep on his federal rights." *Id.* at 1143.

A grant or denial of equitable tolling rests in the sound discretion of the district court. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1177 (10th Cir. 2015). We will uphold a discretionary ruling "so long as it falls within the realm of . . . rationally available choices." *Eaton v. Pacheco*, 931 F.3d 1009, 1027 (10th Cir. 2019) (internal quotation marks omitted). But a district court abuses its discretion when its ruling is "arbitrary,

---

availability of the remedy." But that statement is accompanied by a citation to §§ 2244(d)(1)(B) and (D), *see id.*, *not* by a citation to § 2244(d)(1)(A). *Miller*, therefore, does not stand for the proposition that a petitioner's lack of knowledge of the right to appeal a criminal judgment is a factor in determining when the judgment becomes final for purposes of § 2244(d)(1)(A).

capricious, whimsical, or manifestly unreasonable," *id.* (internal quotation marks omitted), or when it is "based on a clearly erroneous finding of fact or an erroneous conclusion of law," *Kilgore v. Att'y Gen. of Colo.*, 519 F.3d 1084, 1086 (10th Cir. 2008) (internal quotation marks omitted). Thus, if we were to entertain an appeal on this issue, Mr. Williamson would bear the burden of showing that the district court abused its discretion in denying equitable tolling. And because he is seeking a COA, the question is whether a reasonable jurist could conclude that the district court abused its discretion. *Buck v. Davis*, 580 U.S. 100, 123 (2017).

### 1.    District Court's Review Standard

Mr. Williamson first argues that, in denying him equitable tolling, the district court applied an incorrect standard of review. Respondents moved to dismiss his habeas petition under Rule 12(b)(6). And the applicability of equitable tolling may be decided on a motion to dismiss based on the allegations alone. *See Chance v. Zinke*, 898 F.3d 1025, 1034 & n.7 (10th Cir. 2018). The district court indicated it was applying the Rule 12(b)(6) standard in ruling on Respondents' motion. *See* R., Vol. 1 at 570. Mr. Williamson nonetheless contends that, rather than applying that standard, the district court applied a "merits" standard of review. COA Appl. at 23. But he fails to explain this assertion or point to any portion of the district court's decision supporting it.

Mr. Williamson does not demonstrate that reasonable jurists would debate whether the district court applied the correct standard of review.

### 2.    No Evidentiary Hearing

Mr. Williamson also argues the district court erred by not holding an evidentiary hearing. But the court was deciding a Rule 12(b)(6) motion, and the question was whether he demonstrated an entitlement to equitable tolling based solely on the allegations in his habeas petition. *See Chance*, 898 F.3d at 1034 & n.7.[7] The district court's decision not to hold an evidentiary hearing on the issue of equitable tolling is not reasonably debatable.

### 3.    Statement in Interlocutory Order

Mr. Williamson questions how the district court could grant the Respondent's motion to dismiss after stating in an earlier order that he had "made a cogent argument for equitable tolling," Suppl. R., Vol. 1 at 27.[8] In making that statement, the court did not definitively conclude that Mr. Williamson satisfied the standard for equitable tolling. And its preliminary assessment of the facts he alleged was subject to revision before the entry of a final judgment. *See* Fed. R. Civ. P. 54(b) (providing that interlocutory orders "may be revised at any time before the entry of a judgment"). Reasonable jurists would

---

[7] Mr. Williamson's petition included the exhibits he attached and incorporated. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). He acknowledges that, although Respondents provided documents with their response to his habeas petition, they did not relate to his claim that equitable tolling was warranted.

[8] The district court made this statement in granting Mr. Williamson a stay so that he could pursue his claim related to *Rosen* in the WSC.

not debate whether the district court was bound by a previous statement regarding the persuasiveness of Mr. Williamson's equitable-tolling argument.

### 4.    Extraordinary Circumstance

Mr. Williamson states that "the predominant ground" on which he based his argument for equitable tolling was his "poor and deteriorating mental and emotional health" after he was sexually assaulted in February 2021.  COA Appl. at 24.  He contends that the district court failed to accept as true all of the well-pleaded factual allegations in his petition and view those allegations in the light most favorable to him.  He asserts that the court ignored his individual circumstances, failed to discuss documents showing his mental health requests, treatment plans, and other exhibits, and ultimately erred in concluding that his mental health impairment was not sufficiently severe to justify equitable tolling.[9]

The district court stated it was not "minimiz[ing] the mental anguish suffered by someone subjected to sexual assault," and it recognized that Mr. Williamson had regularly sought mental health services from the WDOC.  R., Vol. 1 at 580.  The court then held that equitable tolling of the § 2244(d)(1) limitations period based upon a mental health impairment is warranted if the impediment is so severe that the prisoner has been adjudicated incompetent or institutionalized, or if the prisoner's mental condition prevents him from pursuing his own claim.  Mr. Williamson does not show that

---

[9] Mr. Williamson also cites the "no set of facts" pleading standard but the Supreme Court abandoned that standard in favor of the plausibility standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007).

reasonable jurists would dispute the district court's application of this standard, which is consistent with published decisions by this court discussing the showing necessary to equitably toll a statute of limitations based on a mental impairment. *See, e.g.*, *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996); *see also Ebrahimi v. E.F. Hutton & Co.*, 852 F.2d 516, 522 n.7 (10th Cir. 1988).[10]

Mr. Williamson did not allege that he was adjudicated incompetent or institutionalized due to mental illness. And the district court held that his documents showed he was not mentally incapacitated in the time period between the sexual assault on February 22, 2021, and the deadline to file his § 2254 petition on July 6, 2021. *See* R., Vol. 1 at 580-81 (noting Mr. Williamson's letters to the court clerk, his trial attorney, and another lawyer in which he requested documents, explained perceived issues with his case, and sought representation, as well as his requests for legal materials and extra computer time to complete his state post-conviction petition); *see also id.* at 350-75 (Mr. Williamson's letters and requests). This conclusion is again consistent with our caselaw. In *Biester*, we held that because the evidence showed the appellant was capable of pursuing his own claim, his mental condition did not rise to the level of a mental incapacity sufficient to toll a statute of limitations. 77 F.3d at 1268; *see also Ebrahimi*, 852 F.2d at 522 n.7 (stating that "a mentally incompetent person is one who is so affected mentally as to be deprived of sane and normal action or who lacks sufficient capacity to understand in a reasonable manner the nature and effect of the act he is performing"

---

[10] Neither *Biester* nor *Ebrahimi* held that mental incapacity tolls a federal statute of limitations. It is unnecessary to decide that issue under the circumstances of this case.

(internal quotation marks omitted)).  Mr. Williamson does not show that reasonable jurists would debate whether the district court correctly concluded that his allegations fell short of the facts needed to demonstrate an extraordinary circumstance based upon a mental health impairment.

### 5.    Diligent Pursuit of Federal Rights

Mr. Williamson argues the district court also erred in concluding he did not diligently pursue his rights.  He asserts that the court required him to show more than just reasonable diligence following the sexual assault.  But his contention incorrectly assumes that the court found he was mentally incapacitated.[11]  To the contrary, the court relied on his efforts to pursue his rights in the months leading up to the July 2021 federal filing deadline as supporting its conclusion that he was not mentally incapacitated.  It further concluded he did not pursue his federal rights as diligently as he could have under the circumstances.

The district court also held Mr. Williamson had to show he had pursued his rights before the COVID-19 lockdown, which began on the day he was sexually assaulted. *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (noting petitioner did not explain his failure to pursue his federal claims before a prison transfer that he argued was an extraordinary circumstance).  Mr. Williamson alleged impediments to pursuing his rights,

---

[11] Mr. Williamson asserts that "the message that the [district court's] order conveys is that a petitioner may show that he was incapacitated, but if he shows documentation that he was pursuing (or at least attempting to pursue) his rights diligently, then he is somehow capable of prosecuting a case and is not entitled to equitable tolling." COA Appl. at 32.

17

including a lack of legal resources in the county jail and the structured nature of the Wyoming Boot Camp. But alleging impediments does not suffice. Mr. Williamson was required to "allege with specificity the steps he took to diligently pursue his federal claims." *Yang*, 525 F.3d at 930 (internal quotation marks omitted); *compare United States v. Denny*, 694 F.3d 1185, 1191 (10th Cir. 2012) (noting federal inmate did not allege he requested legal materials or a § 2255 motion form during a prolonged segregation when he claimed a denial of access to legal materials), *with United States v. Gabaldon*, 522 F.3d 1121, 1125-26 (10th Cir. 2008) (noting federal inmate "detailed the numerous actions he took in preparing his § 2255 motion" before prison authorities seized and refused to return all of his legal documents, including his draft § 2255 motion). Mr. Williamson does not cite, and we have not found, any allegation in his petition regarding actions he took to pursue his rights between July 6, 2020, when his conviction became final, and December 6, 2020—the date he admits he began working on his post-conviction claims. He therefore failed to show that he did not sleep on his federal rights for the first five months of his one-year period to file a § 2254 petition. Reasonable jurists would not debate the district court's conclusion that Mr. Williamson did not diligently pursue his rights.

## III.    Conclusion

Mr. Williamson has not shown that reasonable jurists would debate the district court's holding that his § 2254 habeas petition was untimely. He also has not demonstrated that a reasonable jurist could conclude that the district court abused its discretion in declining to equitably toll the limitations period. We therefore deny

18

Mr. Williamson's application for a COA and dismiss this matter.  We grant his motion to proceed on appeal without prepaying costs and fees.  We deny his motion and emergency motion to expedite the court's consideration of this matter.

Entered for the Court


Allison H. Eid
Circuit Judge